# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>MANSTONE COUNTERTOPS LLC,<br><br>Debtor. | Chapter 11<br>(Jointly Administered)<br>Case No. 2:09-bk-26913-SSC<br>Case No. 2:09-bk-32033-SSC<br>(Not for Publication- Electronic Docketing ONLY)<br>MEMORANDUM DECISION |
| In re:<br>DAVID R. ROBINSON<br>CHELLEE C. ROBINSON<br><br>Debtor. | |

## I. PRELIMINARY STATEMENT

This matter comes before the Court on a "First and Final Fee Application for Payment of Compensation to Counsel for Manstone Countertops LLC" and "First and Final Fee Application for Payment of Compensation to Counsel for David and Chellee Robinson" filed with the Court on November 20, 2012 by Robert M. Cook. These fee applications were filed per the Court's Minute Entry Order on October 10, 2012, after the chapter 11 trustees were appointed in each case. Several objections followed from the appointed chapter 11 trustees, a

1

creditor, and the United States Trustee.

After conducting a hearing on the matter December 19, 2012, the Court deemed the matter under advisement. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2009).

## II. FACTUAL BACKGROUND

On October 22, 2009, Manstone Countertops LLC ("Manstone") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On December 11, 2009, David R. Robinson and Chellee C. Robinson (the "Robinsons") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Court granted the applications by Manstone and Robinsons (collectively, "the Debtors") to employ Robert Cook as counsel. Counsel had filed with his application to employ a Bankruptcy Rule 2014 affidavit in which he declared that he "[did] not hold or represent interests adverse to this estate, and [had] no professional connection with any creditor or party in interest, or its respective attorneys, and accountants." These cases are jointly administered per this Court's March 8, 2010 Order.

Mr. Cook represented the Debtors in lengthy Chapter 11 cases, which remain ongoing. The following describes the general progression of the cases through Mr. Cook's removal as attorney by court order. The Debtors filed one Disclosure Statement for both cases on November 19, 2010, to which there were multiple objections. On August 2, 2011, the Court held a hearing on the disclosure statement and Debtor's counsel, Mr. Cook, sought a continuance to amend the disclosure statement. Between November 19, 2010 and March 16, 2012, Mr. Cook filed five (5) Amended Plans and Disclosure Statements. Following a February 7, 2012 hearing on the Fourth (4th) Amended Disclosure Statement, the Court ordered the Debtors to file separate disclosure statements and plans: one for Manstone and one for the Robinsons.

2

1    The Debtors filed the Fifth (5th) Amended Disclosure Statements on March 16,
2    2012, and the Court held a hearing on June 7, 2012. At the hearing, the Court found that the
3    Debtors did not provide adequate information upon which creditors could make an informed
4    decision as to how to vote on the Debtors' Plans. For instance, the Debtors proposed to pay
5    anywhere between 10% and 100% of their claims, and the Debtors provided no financial
6    projections for an entity wholly owned by the Robinsons that Debtors intended to use as the
7    source for Plan funding in both cases. The Court allowed the Debtors another opportunity to
8    produce disclosure statements containing adequate information. Thus, the Court ordered that
9    Debtors' counsel, Mr. Cook, have until July 6, 2012 to provide financial projections for the
10   debtor-owned entity and outline exactly how the Debtors proposed to pay creditors in a Sixth
11   Amended Disclosure Statement and Plan in each case. The hearing was continued to July 25,
12   2012.

13          The Debtors did not file the Sixth (6th) Amended Disclosure Statements nor the
14   financial projections, and Mr. Cook failed to appear at the July 25 hearing. At that hearing, the
15   Court appointed Chapter 11 trustees for both Manstone and the Robinsons, and set a status
16   hearing for October 10, 2012 on the cases as well as an Order to Show Cause as to why Mr.
17   Cook should not be removed as counsel for the Debtors out of possession. At the October 11
18   hearing, the Court ordered Mr. Cook to file his fee application in each case, and the Order to
19   Show Cause hearing was continued to December 19, 2012. Mr. Cook filed his fee applications.
20   In these applications, Mr. Cook requests $25,000 for each case, though he lists fees and costs in
21   the amount of $79,105.09 and $45,490.00 for Manstone and the Robinsons, respectively.  The
22   United States Trustee, both appointed Chapter 11 Trustees, and a creditor objected for the
23   reasons as discussed below.

### III.  ISSUES

A. Whether Attorney Robert Cook should be denied compensation on grounds of failure to disclose his earned upon receipt retainer agreement.

3

B. Whether Attorney Cook may be compensated for work prior to court approval and subsequent to his removal.

C. Whether Attorney Cook's fees are reasonable.

## IV. DISCUSSION

### A. Mr. Cook's Failure to Disclose the Earned Upon Receipt Provision in the Fee Agreement with Debtors

The objecting parties argue that Mr. Cook failed to disclose that the retainers he received prior to the petition were flat fees, earned upon receipt. Indeed, while Mr. Cook's employment applications disclose that he had received a retainer of $25,000 in each case, the applications do not state that they were flat fees. In fact, Mr. Cook lists the hourly rates for himself and his legal assistants, indicating that he would bill on an hourly basis. More importantly, nowhere on the employment application does Mr. Cook indicate that the $25,000 retainers were earned upon receipt. Nonetheless, Mr. Cook claims for the first time in his fee applications–filed nearly three years after the cases were originally filed– that the $25,000 retainers received in each case were "flat fee[s] earned upon receipt."

Section 329 requires counsel for the debtor to file with the court a statement of compensation paid or agreed to be paid made within one year before the filing of the petition for services related to the case. When applying for fees, the applicant must disclose "the precise nature of the fee arrangement, and not simply identify the ultimate owner of the funds." In re Park-Helena Corp., 63 F.3d 877, 881 (9th Cir. 1995). An attorney must also comply with Bankruptcy Rule 2014, which requires professionals to disclose "all...connections with the debtor, creditors, [or] any other party in interest," and with 11 U.S.C. § 327(a), which requires that the professional be disinterested. The Code defines a "disinterested" person as one that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection

4

Case 2:09-bk-32033-PS    Doc 77    Filed 03/26/13    Entered 03/26/13 15:38:57    Desc
Main Document    Page 4 of 10

1 | with, or interest in, the debtor ..., or for any other reason." 11 U.S.C. § 101(14)(C).

2 |       Failure to disclose fully relevant information related to a retainer may result in a
3 | denial of all requested fees, even if the failure to disclose is negligent or inadvertent. Park-
4 | Helena Corp., 63 F.3d at 882; In re Lewis, 113 F.3d 1040, 1045 (9th Cir. 1997). Failure to
5 | disclose critical information to the Court deprives the Court of an opportunity to make an
6 | informed decision and frustrates the disclosure provisions of Section 329 and Bankruptcy Rule
7 | 2016. In re Crimson Investments, N.V., 109 B.R. 397, 401 (Bankr. D. Ariz. 1989). Even when
8 | there is no actual harm to the estate, the bankruptcy system itself is harmed by a professional's
9 | failure to make required disclosures. In re LSS Supply Inc., 247 B.R. 280, 283 (Bankr. D. Ariz.
10 | 2000).

11 |       Generally, a retainer taken by a debtor's attorney for services to be rendered
12 | during a bankruptcy case is to be held in trust for the debtor, except to the extent that attorneys'
13 | fees are allowed by the Court pursuant to Bankruptcy Code Sections 330 and 331 governing
14 | compensation. Crimson, 109 B.R. at 402. Pursuant to Arizona law and the Arizona Rules of
15 | Professional Conduct, property held by an attorney for the client's benefit is held in trust and
16 | must be segregated. Matter of Carragher, 157 Ariz. 219, 756 P.2d 316, 319 (1988); ER 1.15,
17 | Rule 42, Rules of the Supreme Court of Arizona. Therefore, a retainer received pre-petition is
18 | generally estate property held in trust for the benefit of the estate. Crimson, 109 B.R. at 402. The
19 | Arizona Rules of Professional Conduct also allow an attorney to charge a flat fee retainer or a
20 | non-refundable retainer. Arizona Bar Ethics Op. 10–03 (June 2010); see also Arizona Bar Ethics
21 | Op. 99–02 (April 1999). Nonetheless, in the context of bankruptcy, a bankruptcy court must still
22 | make the determination that the debtor's counsel is a disinterested party pursuant to § 327 and
23 | that the terms and conditions of the employment are reasonable pursuant to § 328.

24 |       In this case, Attorney Robert Cook filed his employment application on behalf of
25 | Manstone on November 11, 2009 and filed his application on behalf of the Robinsons on
26 | December 18, 2009. In each of these applications, Mr. Cook disclosed that he had received

5

$25,000 prior to the filing of the case, but he failed to fully explain the nature of these payments by omitting the fact that they were flat fees, earned upon receipt. Moreover, Mr. Cook listed hourly billing rates, which indicated a fee arrangement whereby Mr. Cook would hold the retainer in trust and apply for compensation with the Court. The applications also included verified statements signed by Mr. Cook and notarized, attesting that Mr. Cook did not hold any interests adverse to the estate. This statement was made in spite of the fact that Mr. Cook became a creditor of the estate by virtue of the earned-upon-receipt nature of the funds received prior to the petition date. For instance, Section 101(10)(A) states that a creditor is someone that has a claim against the debtor. Section 101(5) states that a claim is a "right to payment," whether reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, disputed or undisputed, etc. Although the earned-upon-receipt retainer allowed Mr. Cook to place the funds in his operating account, if properly disclosed, it also triggered the Court's requirement to review the compensation "earned" to determine whether it was reasonable under Sections 328 and 329. Because of Mr. Cook's improper disclosure that he was disinterested and that he would be applying for compensation during the course of the bankruptcy proceeding, he deprived the Court of the ability to review and determine the reasonableness of the compensation, including the earned-upon-receipt retainer that he received at the commencement of the cases.

      Moreover, as discussed more fully in Part B of this decision, it appears that Mr. Cook performed substantial pre-petition services for the Debtors that were not disclosed. In the Manstone case, Mr. Cook rendered pre-petition services in the amount of $3,560. In the Robinson case, Mr. Cook rendered pre-petition services in the amount of $10,857.50. The Court would expect that these services would be paid in full, at the time of filing, in the ordinary course of business to eliminate any argument that Debtors' counsel received a preference. If Debtors' counsel had an earned-upon-receipt retainer, there should have been a discussion of the payment of these pre-petition services, so that the Court could determine the reasonableness of the compensation requested. Mr. Cook's improper disclosure forces the Court to conclude that Mr.

6

Cook had substantial unpaid pre-petition services in each case, at the time he received the earned-upon-receipt retainers, creating a preference and adverse interest as to each estate.

In response to the objections of his fee applications, Mr. Cook argued that the fee agreements were proper because, although the fees were earned upon receipt, the agreements provided that they were refundable upon request by the debtors or by order of the court. This argument misses the mark. In 2009, when Mr. Cook first applied for employment on behalf of the debtors, the Court should have been able to determine whether Mr. Cook was a disinterested party or had an adverse interest to the estates, as well as assess the reasonableness of the fee arrangement. As noted, the Court could have assessed whether the substantial pre-petition payments constituted a preference that would make Mr. Cook a creditor of the estate or have an adverse interest to the estate. Such an inquiry goes to the heart of whether counsel should be employed in any case. Regardless of Mr. Cook's belief that the fee arrangements were proper, his failure to disclose fully the nature of the arrangements at the time of his employment applications–and failure to update the Court for the three years thereafter while the cases were pending– deprived the Court of a meaningful opportunity to conduct such an analysis. Therefore, the Court denies all compensation of fees based on this lack of disclosure and orders Mr. Cook to disgorge the $25,000 retainer received in each case.

### B. Attorney Cook May Not Be Compensated for Services Performed Outside the Approved Employment Period

There are other reasons to deny the compensation requested by Mr. Cook. Mr. Cook billed the debtors for significant fees and expenses both before court approval of his employment as well as subsequent to his removal. Bankruptcy courts in the Ninth Circuit possess equitable power to approve retroactively a professional's valuable but unauthorized services. In re Atkins, 69 F.3d 970, 973-74 (9th Cir. 1995). However, retroactive approval should be limited to situations in which "exceptional circumstances" exist. Id. To show "exceptional circumstances," the professional must 1) satisfactorily explain its failure to seek prior judicial approval, and 2) demonstrate that their services benefitted the estate in a significant

7

manner. Id. Similarly, after appointment of a chapter 11 trustee, the debtor's attorney may only be awarded fees for work that is reasonably likely to benefit the estate, and it requires closer scrutiny because such work may be unnecessarily duplicative of work done by the trustee. In re Xebec, 147 B.R. 518, 523 (9th Cir. BAP 1992); In re Sugarman, 137 B.R. 392 – 94 (Bankr. S.D. Cal. 1992); In re Smith, 317 F.3d 918, 926 (9t h Cir. 2002) *abrogated on other grounds by* Lamie v. United States Trustee, 540 U.S. 526, 531–39, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)

In the Manstone case, this Court approved Cook's employment application on November 16, 2009, and ordered that the he be employed as of November 9, 2009. In the Robinson case, Judge Nielsen approved Cook's employment on December 23, 2009. In the Manstone case, Mr. Cook incurred $2,430.00 in post-petition services rendered to the Debtor prior to his employment. In the Robinson case, Mr. Cook incurred $1,990.00 in post-petition services rendered to the Debtor prior to his employment. Mr. Cook has failed to satisfactorily explain his failure to seek prior judicial approval. This Court does not find that this is an instance where "exceptional circumstances" exist to justify approval of retroactive fees Therefore, this Court disapproves of $2,430.00 in fees in the Manstone case, and $1,990.00 in the Robinson case for work completed by Mr. Cook prior to his approval as counsel.

On July 25, 2012, the Court removed Mr. Cook and appointed chapter 11 trustees in both cases. In the Manstone case, Mr. Cook requests $2,715.00 in fees incurred after his removal. In the Robinson case, he requests $1,575.00 in fees incurred after his removal. Mr. Cook has failed to show that these services benefitted the estate. In fact, the Court has removed Mr. Cook as counsel for the debtors out of possession for his hindrance of these cases. The Court will not approve the fees requested for any time after Mr. Cook was removed.

Therefore, the Court will categorically disapprove fees requested for any of the time periods in which Mr. Cook was not counsel for the Debtors. In the Manstone case, this amounts to $5,145.00. In the Robsinsons case, this amount to $3,565.00.

**C. The Reasonableness of Mr. Cook's Fees**

There is yet a third basis to deny any recovery by Mr. Cook. Even looking only at the fees requested by Mr. Cook during the time of his employment as counsel for the debtors, the Court finds that the fees listed in Mr. Cook's applications are unreasonable. Section 330 provides that a court may award "reasonable" compensation to a professional person employed under § 327 for "actual, necessary services rendered." 11 U.S.C. § 330(a)(1) (2013). A court may award compensation that is less than the amount of compensation requested. § 330(a)(2). To determine the amount of reasonable compensation, § 330(a)(3) provides that the court must:

> [C]onsider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3). Section 330(a)(4)(A) outlines when compensation should not be allowed. A bankruptcy court examines the circumstances and manner in which services are performed and results achieved to determine a reasonable fee. In re Garcia, 335 B.R. 717, 724 (B.A.P. 9th Cir. 2005). In making that determination, a court should consider the following questions:

> (a) Were the services authorized?
> (b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?
> (c) Are the services adequately documented?
> (d) Are the fees [requested] reasonable, taking into consideration the factors set forth in section 330(a)(3)?
> (e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

Id. A court shall not allow compensation for unnecessary duplication of services, or services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case. § 330(a)(4)(A).

The United States Trustee and the chapter 11 Trustees objected to the

9

1 reasonableness of the fees requested by Mr. Cook on numerous grounds, including double
2 billing, excessive time expended, fees for work that is non-legal in nature, excessive rates, and
3 lack of competence. The Court agrees. After a thorough review of both fee applications, the
4 Court is hard pressed to approve any of the fees requested. Each application demonstrates
5 numerous billing errors, requests to be compensated on numerous occasions for the mere
6 downloading of files, the inability of counsel to prepare even basic plans of reorganization that
7 could be approved by the Court, the inability of counsel to draft disclosure statements that
8 contained adequate information, and the inability of counsel to provide services of any benefit to
9 the estates. As a result, the Court requires the disgorgement of the retainer of $25,000 in each
10 case.

## V. CONCLUSION

Based upon the foregoing, the Court concludes that Mr. Cook has not provided a basis to be compensated as counsel for the Debtors. His applications for attorneys' fees are denied. Mr. Cook shall turn over the sum of $25,000 in the Manstone estate, and the sum of $25,000 to the Robinson estate. The U.S. Trustee shall lodge an appropriate form of order.

DATED this 26th day of March, 2013.

_____

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

**BNC to NOTICE**

10